**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

NANCY ROSADO,                                )
                                             )
        Plaintiff,                           )
                                             )
        v.                                   )        C.A. No.: CPU4-23-003464
                                             )
MIDCITIES AUTO SALES, LLC.,                  )
                                             )
        Defendant.                           )

Submitted: August 7, 2025
Decided: October 2, 2025

**<u>DECISION AFTER TRIAL</u>**

Nancy Rosado, *Self-represented Plaintiff*
James J. Haley, Jr., FERRARA & HALEY, Wilmington, Delaware; *Counsel for Defendant*

**Mayer, J.**

This is a breach of contract action that began with a romantic relationship and ended with a breakup. Nancy Rosado ("Plaintiff") left a $20,000 cashier's check with Ezra Richards, payable to the order of Mid Cities Auto Sales, LLC ("Defendant").[1] Plaintiff insists the check was a loan; Defendant argues that it was an investment.[2] On August 7, 2025, the parties convened for trial and the Court reserved decision. This is the Court's final decision after trial.

## FACTS AND PROCEDURAL HISTORY

Trial in this case originally started on April 3, 2025, however, it soon became apparent that both parties were exceedingly unprepared. The Court continued the trial and ordered the parties to collect all relevant videos, proof of the $20,000 check, proof of payments to Plaintiff, and paperwork for all vehicles sold after the date the initial check was cashed.

On August 7, 2025, the parties appeared for the continuation of the trial. Four witnesses testified, including the parties; three videos and four checks were admitted into evidence.[3]

---

[1] Ezra Richards was also a defendant, but the Court granted his Motion to Dismiss as unopposed on October 14, 2024.

[2] In its Answer, Defendant "[a]dmitted that Plaintiff *loaned* Defendant Mid Cities Auto, LLC $20,000.00 for the purchase of vehicles." (emphasis added).

[3] Defendant attempted to enter documentation prepared, for trial, by Defendant's accountant showing the balance sheet of the company; this document was not admitted into evidence.

As finder of fact, the Court is tasked with reconciling any inconsistencies in the evidence presented and drawing all reasonable inferences from the proven facts. After considering the testimony and evidence presented at trial, the Court finds the relevant facts as follows:

Sometime in the spring of 2023, Plaintiff and Ezra Richards began a romantic relationship. On or about May 29, 2023, Plaintiff indicated that she wanted to invest in Mr. Richards' company, Mid Cities Auto Sales, LLC. Mr. Richards relayed Plaintiff's intentions to the co-owner, Jasmine Carter, who expressed some concern but left the decision with Mr. Richards.

After a Memorial Day pool party, Plaintiff, Mr. Richards, and Ms. Carter, discussed the venture. It was determined that Plaintiff would invest and the three would equally split the profits from the vehicles sold. It is unclear how long this profit-sharing structure would continue, *i.e.* indefinite, cease upon Plaintiff's recoupment of her entire investment, cease once all the cars were sold, etc.

Nonetheless, a few days after this discussion, Plaintiff left a cashier's check for $20,000 with Mr. Richards. The memo line of the check reads: "MIDCITY AUTO RE: INVESTMENT NANCY ROSADO." Plaintiff claims that she did not request this wording on the check and that the clerk at the bank wrote those words on their own accord.

After Mr. Richards cashed the check, Ms. Carter used the money to purchase vehicles at auction.[4] Of the vehicles purchased, at least three were sold and the profits were split between the three parties. On July 2, 2023, Plaintiff received a check for $580.00 for the profit from the sale of a 2011 Buick; on July 21, 2023, Plaintiff received a check for $600.00 for the profit from the sale of a Chevy Cruz; and on August 2, 2023, Plaintiff received a check for $450.00 for the profit from the sale of a 2000 Lexus ES 300.[5]

Then, sometime in October 2023, Plaintiff and Mr. Richards' relationship took a turn for the worse, and the two were no longer romantically involved. Two vehicles were later sold but Plaintiff did not receive the profits from Defendant, and she demanded all of her money back. Defendant, at some point, indicated that Plaintiff would receive her payment back once the sale of Mr. Richards' house was finalized. However, after the sale of the home, no payments were made. Thus, this lawsuit ensued.

## DISCUSSION

---

[4] It is not entirely clear how many vehicles were purchased, no documentation was produced of the purchases, however based on Ms. Carter's testimony, roughly 10 vehicles were purchased.

[5] It is also unclear what "profit" means in this case. It is either the sale price in its entirety or the difference between the auction price and the sale price. Plaintiff may be entitled to one third of the profit plus the offsetting price of the vehicle, which would presumably bring a greater return than $20.000.00.

4

In civil claims, the plaintiff bears the burden to prove each and every element of his or her claims by a preponderance of the evidence.[6] "The side on which the greater weight of the evidence is found is the side on which the preponderance of the evidence exists."[7] As trier of fact, the Court is the sole judge of the credibility of each fact witness and any other information provided.

In order for Plaintiff to prevail on her claim for breach of contract, she must establish by a preponderance of the evidence that: (1) a contract existed between the parties; (2) the defendant breached an obligation imposed by the contract, and (3) the plaintiff suffered damages as a result of the breach.[8] "Delaware law adheres to the objective theory of contracts, *i.e.,* a contract's construction should be that which would be understood by an objective, reasonable third party." When the plain meaning of a contract is susceptible to more than one reasonable interpretation, "courts may consider extrinsic evidence to resolve the ambiguity."[9]

Here, there is no written contract, only the testimony and evidence produced. Nonetheless, the parties do not dispute the existence of an oral contract, nor that Defendant is in breach of that contact and damages are owed. Therefore, the Plaintiff has met her burden of proving her claim of breach of contract.

---

[6] *Reynolds v. Reynolds*, 237 A.2d 708, 711 (Del. 1967).

[7] *Id.*

[8] *See Gregory v. Frazer*, 2010 WL 4262030, *1 (Del. Com. Pl. Oct. 8, 2010); *VLIW Technology, LLC v. Hewlett-Packard, Co.*, 840 A.2d 606, 612 (Del. 2003).

[9] *Brace Industrial Contracting, Inc. v. Peterson Enterprises, Inc.*, 2016 WL 6426398, at *6 (Del. Ch. Oct. 31, 2016).

However, the crux of the parties' contentions is whether the $20,000 payment was an investment or a loan; thus, the Court is called upon to determine the nature of the ambiguous oral agreement.

The burden is on both parties to establish by a preponderance of the facts, whether the payment was a loan or an investment.[10] The only concrete evidence before the Court are the three checks from Defendant to Plaintiff and the one from Plaintiff to Defendant, which contain the words 'investment' and 'profit'. Less credible is the testimony from the Plaintiff and her witnesses only being able to recall the word 'loan' being used to define the payment.[11] In contrast, Defendant's witness could only recall 'investment' being used to describe the payment.[12]

A loan is generally a financial agreement where one party lends money to another with an expectation of repayment along with interest over time.[13] While an investment typically involves a party seeking to generate returns through ownership or profit sharing.[14]

---

[10] *See Tanyous v. Happy Child World, Inc.*, 2008 WL 2780357, at *6 (Del. Ch. 2008) ("The Court, therefore, will assume that the burden rested on each individual party to prove his theory of the agreement by a preponderance of the facts.").

[11] Defendant did not request sequestration.

[12] Defendant's Counsel in closing did make the argument that the payment in question was, "in effect, a sweetheart loan—a no interest loan from one sweetheart to another sweetheart."

[13] *See Bank of New York Mellon v. Realogy Corp.*, 979 A.2d 1113, 1122 (Del. Ch. 2008).

[14] *See generally S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946) (legal standard established by the United States Supreme Court to determine whether a transaction qualifies as an investment contract).

The facts of this case are unclear, however what is clear is the parties' informality and carelessness; nonetheless the Court "will not disturb a bargain because, in retrospect, it appears to have been a poor one."[15]

What is puzzling is that it appears that both parties have picked the wrong argument. If Plaintiff's payment is found to be an investment, then she would potentially be entitled to one third of the profit of all cars sold, even if it was just the profit from the vehicles purchased with her money. If Plaintiff's payment is found to be a loan, as Plaintiff insists, then the most she could recover is $18,370.[16]

The Court posited this query to the parties before closing arguments. Defendant quickly changed course and argued in closing that the payment was a "sweetheart loan" with no interest and damages must not exceed $20,000.00. Plaintiff did not change her position and insists that the payment was a loan and requests $20,000.00 minus the amounts already paid. Both parties ultimately concluded that the payment was a loan. The Court finds that the parties have failed to prove the payment was an investment, therefore based on the final mutual contentions that the payment was a loan, the Court finds that the payment was a loan.

---

[15] *West Willow-Bay Court, LLC, v. Robino-Bay Court Plaza, LLC*, 2007 WL 3317551, at *9 (Del. Ch. 2007).
[16] $20,000.00 - $1,630.00 = $18,370.00

The standard remedy for breach of contract is based upon the reasonable expectations of the parties to the contract.[17] Expectation damages are measured by determining "the amount of money that would put the promisee in the same position as if the promisor had performed the contract."[18] "Damages for a breach of contract must be proven with reasonable certainty. Recovery is not available to the extent that the alleged damages are uncertain, contingent, conjectural, or speculative."[19]

The damages in this case are certain, Plaintiff loaned Defendant $20,000.00 and she has not received repayment in full. Defendant repaid $1,630.00. At no point was there any discussion about interest nor a time period for payments, but both parties assert that this was a "sweetheart" loan.[20] Therefore, Plaintiff is entitled to $18,370.00.

---

[17] *Duncan v. Thera Tx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001).
[18] *Id.*
[19] *Dill v. Dill*, 2016 WL 4127455, at *1 (Del. Super. Aug. 2, 2016) (internal citations omitted).
[20] Under Delaware law, the absence of time for payment is not material to contract formation. The courts may infer that payment should be made within a reasonable time period. *Gilronan v. Birmingham*, 2020 WL 247326 (Del. Com. Pl. 2020) (C.J. Smalls) "If no Time for performance is fixed, the Court will imply a reasonable time." *Stone Creek Custom Kitchens & Design v. Vincent*, 2016 WL 9048784 (Del. Super.

## CONCLUSION

Therefore, the Court finds in favor of Plaintiff Nancy Rosado against

Defendant Mid Cities Auto Sales, LLC, in the amount of $18,370.00.

Katharine L. Mayer
Judge